CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 The Jefferson High School District No. 1 (the District) appeals from the District Court’s Order filed March 27, 2013, granting summary judgment to the Boulder Monitor (Monitor). We reverse.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 The Jefferson County High School Board established a budget subcommittee, composed of three members of the full Board. The subcommittee’s task was to consider budget issues and to report recommendations to the full Board. The Board met in a regular meeting on July 10, 2012, and discussed a number of issues, including several personnel positions. The Board reviewed four applicants for a principal position, and asked the budget subcommittee to meet on July 13, 2012 “to see if there is any significant savings that could be identified” regarding the salary for the position.
¶3 In addition to the discussion at the July 10 Board meeting as noted in the minutes of that meeting, the Board gave public notice of the July 13, 2012 meeting of the subcommittee. The notice indicated that the subcommittee would discuss the 2012-2013 school district budget, and noted that: “No decisions are made by a subcommittee of the Jefferson High School Board of Trustees unless authorized by action of a majority of the membership of the board in a regular meeting.”
¶4 The Boulder Monitor is a weekly newspaper covering Jefferson County and its county seat, Boulder. The Monitor, and more specifically its publisher Jan Anderson, claims that its policy is to attend each meeting of the full School Board and that it has done so for several years. The Monitor was aware of the context of the budget subcommittee meeting, having attended the July 10 regular meeting of the full Board. The Monitor admits that it knew about the notice of the July 13 subcommittee meeting but decided not to send a reporter to cover it because it was not noticed as a meeting of the full School Board.
¶5 Pursuant to the discussion and directive at the regular Board meeting July 10, the three designated members of the subcommittee *214 met on July 13. A fourth member of the School Board who was not a designated member of the budget subcommittee checked to insure that three Board members were present to participate. Her affidavit indicated that she was concerned that one of the subcommittee members had recent surgery and might not be able to attend. All three subcommittee members attended, so the fourth School Board member sat in the audience to observe the discussions about the 2012-2013 budget. The subcommittee discussed the salary level to allocate to a principal position and to a part-time athletic director position. The fourth Board member asked some questions during the discussion. The budget subcommittee, by consensus of its three members, decided to recommend to the School Board a salary of $55,000 for the principal position and a salary of $10,000 for the part-time athletic director position. After the subcommittee set the salary levels, there was a discussion of whether or not full benefits would also need to be paid. The school superintendent was present, and he opined that two of the four applicants for the open principal position would likely not be interested at the salary level recommended by the subcommittee.
¶6 One of the subcommittee members took notes of the discussion and intended to send her notes to the full School Board as a report of the subcommittee’s recommendations. She sent a draft of her notes of the meeting to each person who attended, including the fourth board member. The fourth Board member sent back some suggested revisions. The full School Board considered and acted upon the subcommittee’s recommendations at its next regular meeting.
¶7 Jan Anderson attended the next scheduled meeting of the full School Board. She determined, based upon what she heard there and upon the notes of the budget subcommittee meeting, that the subcommittee meeting had actually been a meeting of the full School Board. Anderson concluded that the presence of the fourth board member meant that a quorum of the School Board had met. Anderson further determined that the subcommittee had done more than discuss the 2012-2013 budget, and had acted in some way to eliminate two of the candidates for the principal position. Anderson determined that the notice of the subcommittee meeting had not disclosed that it would be a meeting of the full School Board and that the notice had not disclosed that the subcommittee would take action to reduce the number of candidates from four to two.
¶8 The Monitor sued the District contending that the meeting of the budget subcommittee violated the open meeting and public participation requirements of Montana law, Title 2, chapter 3, MCA. The complaint alleged that there was a quorum of the School Board *215 present at the subcommittee meeting on July 13; that the meeting discussed “personnel matters” in addition to the 2012-2013 budget; that all four Board members present participated in the discussion; and that the public notice of the subcommittee meeting was inadequate. The complaint requested a declaration that the Board had violated the open meeting and public participation requirements of Montana law; requested that if any decision was made at the July 13 meeting, it be voided; and requested an injunction against the School Board’s conducting any . other official business until its members completed a course in the open meeting and public participation requirements of Montana law. The Monitor also requested that the School District be ordered to pay its attorney fees.
¶9 The parties conducted limited discovery and both sides filed motions for summary judgment. The District Court entered an Order filed March 27,2013, granting summary judgment to the Monitor and awarding it attorney fees as the prevailing party. The District Court granted summary judgment to the Monitor based upon its determination that the “critical facts are undisputed.” The critical facts noted in the District Court’s Order were that a quorum of the School Board convened at the budget subcommittee meeting on July 13,2012; that the members present at that meeting heard and discussed school business; that the members present “discussed at least four applications for an administrative position”; that the members present acted to reduce the “roster of several candidates” for the principal position; that the fourth School Board member was “clearly involved in the conduct of the school business”; and that the School Board failed to give notice that these actions would be taken.
¶10 The District Court, based upon its conclusion that these were undisputed facts, granted summary judgment to the Monitor. The only relief the District Court granted was a declaration that the School Board had violated the open meeting and public participation requirements of Montana law at the July 13, 2012 meeting, and a determination that the Monitor was entitled to attorney fees. The issue on appeal is whether the District Court properly granted summary judgment to the Monitor based upon the conclusion that the School Board violated Montana law in the manner in which the July 13,2012 budget subcommittee meeting was conducted.
STANDARD OF REVIEW
¶11 Summary judgment is governed by M. R. Civ. P. 56. That Rule provides that a party is entitled to summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on *216 file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” The moving party must demonstrate the absence of any genuine issues of material fact and its entitlement to judgment as a matter of law. Hiebert v. Cascade County, 2002 MT 233, ¶ 20, 311 Mont. 471, 56 P.3d 848. If the moving party satisfies this burden then the opposing party must present material and substantial evidence to demonstrate that there are genuine issues of material fact, or that it is entitled to judgment as a matter of law. Hiebert, ¶ 21. All reasonable inferences that might be drawn from offered evidence should be drawn in favor of the party opposing summary judgment. Montana Metal Bldgs, v. Shapiro, 283 Mont. 471, 474, 942 P.2d 694, 696 (1997).
¶12 On appeal this Court reviews decisions on summary judgment de novo, applying the same evaluation as the district court under M. R. Civ. P. 56 and determining whether the district court’s conclusions of law are correct. Smart v. Judicial Standards Comm., 2002 MT 148, ¶¶ 9-10, 310 Mont. 295, 50 P.3d 150.
DISCUSSION
¶13 In Montana the public’s constitutional “right to know” guarantees that “[n]o person shall be deprived of the right ... to observe the deliberations of all public bodies or agencies of state government and its subdivisions.....” Mont. Const, art. II, § 9. This mandate is implemented through the open meeting laws codified at §§ 2-3-201, et. seq., MCA. Common Cause of Montana v. Statutory Committee, 263 Mont. 324, 329, 868 P.2d 604, 607 (1994). Public bodies in Montana “exist to aid in the conduct of the peoples’ business” and it is the intent of the statutes that the “actions and deliberations of all public agencies shall be conducted openly” and “[a]ll meetings of. public or governmental bodies ... must be open to the public.” Section 2-3-201, MCA. A “meeting” is “the convening of a quorum[1] of the constituent membership of a public agency... to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power.” Section 2-3-202, MCA. The public is entitled to notice of public meetings and the opportunity to participate. Sections 2-3-103 and -104, MCA. These constitutional and statutory provisions “must be liberally interpreted in favor of openness.” Associated Press v. *217 Crofts, 2004 MT 120, ¶ 22, 321 Mont. 193, 89 P.3d 971.
¶14 The parties do not dispute that the School Board could establish a subcommittee to discuss budget issues and then make recommendations for action to be taken by the full Board. There is no dispute that the School Board provided public notice of the July 13, 2012 meeting of the budget subcommittee and that the Monitor got actual notice. There is also no dispute that Monitor made its own decision not to attend the meeting called to discuss the 2012-2013 budget. The Monitor disputes the adequacy of the notice, based upon its contention that it was a meeting of a quorum of the School Board and that it took action to eliminate candidates for a vacant principal position.
¶15 The District Court’s decision to grant summary judgment to the Monitor was expressly premised upon the conclusion that the “critical facts are undisputed.” The absence of a genuine dispute as to “critical facts” or “material facts” in the language of M. R. Civ. P. 56, is the lynchpin of summary judgment. In the present case, however, the record shows that at the time the District Court entered its Order granting summary judgment, there were genuine disputes as to the material facts the District Court relied upon. The School District’s pleadings, along with its briefs, affidavits and other materials submitted to the District Court disputed the essential facts relied upon by the District Court.
¶16 The District contended that the fourth Board member attended the subcommittee meeting in her capacity as an interested citizen. The District disputed that the fourth Board member was involved in the meeting as a member of the Board and contended that she did not participate in reaching the subcommittee consensus that was reported to the full School Board. The District asserted that only the designated members of the subcommittee had the authority to consider the budget issue and report its consensus. The District disputed that a quorum of the Board met and took action and significantly disputed that the subcommittee “acted to reduce a field of four candidates to two candidates.” The District contends that the subcommittee’s only action after budget review was to reach a consensus on a salary level to recommend to the School Board for final action. The District maintains that the Monitor’s positions on the facts are based upon a misunderstanding of what happened and upon a mis-construction of the events. Materials filed in the record by the Monitor took opposing positions on these factual points.
¶17 The District Court resolved the factual disputes and contentions between the parties in favor of the scenario posited by the Monitor. *218 While the Monitor’s factual contentions may ultimately prove out, the District Court should'not have resolved factual disputes between the parties when granting summary judgment. It is settled law that it is improper for a district court to resolve factual disputes in a summary judgment proceeding. Cole v. Flathead County, 236 Mont. 412, 416, 771 P.2d 97, 99 (1989); Walker v. St. Paul Fire & Marine, 241 Mont. 256, 258-59, 786 P.2d 1157, 1159 (1990); Mount. West Bank v. Mine & Mill Hydraulics, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048; Corporate Air v. Edwards Jet Center, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111.
¶18 The District Court erred by granting summary judgment when there were genuine issues of material fact.
¶19 The District Court also incorrectly applied the law by concluding that the July 13, 2012 subcommittee meeting was a meeting of a quorum of the School Board for purposes of the open meeting statutes. That ruling was based upon a determination that the subcommittee meeting transformed into a meeting of a quorum of the full School Board because a fourth Board member stayed during the proceedings. The open meetings statutes apply to a “meeting,” which occurs upon the “convening” of a “quorum” of the “constituent membership of a public agency.” Section 2-3-202, MCA. The only meeting that was convened on July 13,2012, was a noticed meeting of the three-member subcommittee tasked by the School Board to make budget recommendations regarding the salary level for an open principal position. The only persons who convened to “hear, discuss or act upon” budget recommendations were the three designated members of the subcommittee who alone could reach a consensus to report to the full School Board. This is consistent with § 20-3-322(4), MCA, which provides that the “business” of a school board may only be conducted at “regular meeting or a properly called special meeting” of the school board.
¶20 Nothing in the letter or spirit of the open meeting statutes prohibits a person in the position of the fourth member in this case from attending and observing a meeting of a subcommittee along with any other members of the public. In fact, it can be argued that the better public policy would be to encourage members of public bodies to observe such events so they can be better educated and informed about matters that they will later vote on in their official capacities. Penalizing those members and the public bodies they serve by an unwarranted application of the statute creates a difficult labyrinth for public servants and threatens to turn any Saturday night at the county *219 rodeo into a board meeting that must be noticed. We decline to formulate such strictures when none exist in the statute. Sonsteile v. Board of Trustees, 202 Mont. 414, 419, 658 P.2d 413, 416 (1983).
¶21 We caution that this Opinion should not be taken as an invitation for subterfuge by public bodies or their members to avoid public scrutiny and to conduct business in violation of the requirements of the open meeting statutes. We determine only that the statutes do not prohibit a member of a public body from observing a meeting of a sub-quorum subcommittee, or even asking questions during the meeting, and that doing so does not constitute the convening of a quorum. As § 2-3-202, MCA, provides, a meeting exists only when a quorum has been convened. In the present case the mere presence of the fourth Board member in the room to observe the budget subcommittee did not transform that meeting into a meeting of the full School Board.
¶22 The Monitor does not contend, and the District Court did not determine, that it was improper for the School Board to appoint a budget subcommittee and to ask it to consider and recommend a salary level for the principal position. It seems clear that it would be virtually impossible for the subcommittee to discuss the money to be allocated in a vacuum without mentioning the position that the money would be used to fill and without discussing such issues as whether or not the salary allocation would include benefits. The District contends that it was the Superintendent, at the July 13 meeting, and not the subcommittee members, who offered his opinion that the salary level selected by the subcommittee would probably not attract some of the then-current applicants for the principal position. As noted above, there are contested issues of fact that must be resolved in this case and that may not be resolved on summary judgment.
¶23 The District Court improperly granted summary judgment to the Monitor and therefore also improperly granted attorney fees to the Monitor. The Order granting summary judgment is reversed and this case is remanded for further proceedings consistent with this Opinion.
JUSTICES WHEAT, COTTER and RICE concur.

A quorum of a school board is a majority of the trustees’ membership. Section 20-3-322(4), MCA.