

DA 13-0820

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2014 MT 82

ROBERT WILLEMS, PHYLLIS WILLEMS,
TOM BENNETT, BILL JONES, PHILIP WILSMAN,
LINDA WILSMAN, JASON CARLSON, MICK
JIMMERSON, DWAYNE CROOK, MARY JO CROOK,
JAMES STUNTZ, RANDY BOLING, ROD BOLING,
BOB KELLER, GLORIA KELLER, RONALD TORGESON,
RUTH TORGESON, ED TIMPANO, JEANNIE
RICKERT, TED HOGELAND, KEITH KLUCK,
PAM BUTCHER, TREVIS BUTCHER, BOBBIE LEE
COX, WILLIAM COX, and DAVID ROBERTSON,

        Plaintiffs and Appellants,

    v.

STATE OF MONTANA, LINDA McCULLOUCH, in
her capacity as Secretary of State for the State of Montana,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. ADV-2013-509
                Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Matthew G. Monforton; Monforton Law Office, PLLC; Bozeman,
           Montana

      For Appellees:

           Timothy C. Fox, Montana Attorney General; Lawrence VanDyke,
           Montana Solicitor General; J. Stuart Segrest, Assistant Attorney
           General; Helena, Montana

Submitted on Briefs:  February 25, 2014
Decided:  March 26, 2014

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Plaintiffs are registered voters in Fergus and Wheatland Counties seeking to invalidate the Montana Districting and Apportionment Commission's (Commission) assignment of two "holdover senators" in its final 2013 redistricting plan. Defendants are the State of Montana and Secretary of State Linda McCulloch (State). Plaintiffs appeal from an order of the First Judicial District Court, Lewis and Clark County, denying their motion for summary judgment and granting the State's motion for summary judgment. We affirm.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 *1. Did the District Court err in concluding that the Commission did not violate the public's "right to know?"*

¶4 *2. Did the District Court err in concluding that the Commission did not violate the public's right of participation?*

¶5 *3. Did the District Court err in concluding that the Commission did not violate Plaintiffs' right of suffrage?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 This case arises out of the 2013 redistricting of the Montana Legislature into 100 house districts and 50 senate districts. Specifically, the case below involves the assignment of two "holdover senators." A "holdover senator" is a senator elected under the old districting system who must be assigned to a redrawn district to serve the final

3

two years of his or her term. A "holdover senator" is, therefore, not required to seek election at the general election held immediately following implementation of the districting plan.[1]

¶7 Montana's legislative districts are determined after each federal census by an appointed commission according to the terms of Article V, Section 14 of the Montana Constitution. After the Commission is formed, it must prepare a plan for redistricting and submit the plan to the Legislature during its regular session. The Legislature then has 30 days to make recommendations and return the plan to the Commission. Within 30 days of receiving the recommendations, the Commission must file a final plan with the Secretary of State. Once the plan is filed, it becomes law, and the Commission dissolves.

¶8 A federal census was conducted in 2010. As required by the Montana Constitution, the legislative leadership appointed four members to the Commission. Because those members failed to timely select a fifth member, the Montana Supreme Court appointed the fifth member, James M. Regnier (Chairman Regnier). The Commission submitted its final plan to the Secretary of State on February 12, 2013, and dissolved. Mont. Const. art. V, § 14(4)-(5).

¶9 In 2010, Llew Jones (Jones) was elected to the Montana Senate in Senate District 14. After the districts were redrawn, his residence was in Senate District 9. The

---

[1] House candidates run for election every two years, and Senate candidates run every four years. Even in non-redistricting years, those senators who do not need to run in the interim election are called "holdover senators." Of course, in non-redistricting years, they remain "holdover senators" in their existing districts.

Commission originally assigned Senator Rick Ripley (Ripley) to Senate District 9. Jones was not a "holdover senator" and, thus, would be not be able to run for re-election until 2016. Government and community leaders from north-central Montana sent letters to the Commission asking it to assign Jones to a senate district in which he could run in 2014. On January 27, 2013, a bipartisan group of six senators, six representatives, and four community leaders submitted a letter with the same request.

¶10 Prior to the Commission's final meeting on February 12, 2013, the Commissioners talked one-on-one about these public requests and how best to address them. At the Commission's final meeting, a majority of Commission members voted to assign Ripley to Senate District 10 and Senator Bradley Hamlett to Senate District 15. Because of these assignments, Senate District 9 had no "holdover senator," and Jones would be able to run there in 2014. The Commission gave an opportunity for public comment at this final meeting, of which there was none, and then adopted and submitted the final redistricting plan, which included the so-called "Llew Jones amendment" (Jones Amendment).

¶11 On March 14, 2013, Plaintiffs filed a complaint against the State seeking injunctive and declaratory relief in the Fourteenth Judicial District Court, Wheatland County. In their initial complaint, Plaintiffs alleged the following causes of action: denial of the right of suffrage in violation of Article II, Section 13 of the Montana Constitution (Section 13) (Count I); denial of the right to participate in violation of Article II, Section 8 of the Montana Constitution (Section 8) (Count II); failure to submit the redistricting plan to the Legislature in violation of Article V, Section 14(4) of the Montana

5

Constitution (Count III); denial of equal protection in violation of Article II, Section 4 of the Montana Constitution (Count IV); denial of equal protection (inverse class of one) in violation of Article II, Section 4 of the Montana Constitution (Count V); unlawful consideration of an incumbent legislator's address in redistricting in violation of § 5-1-115(3)(a), MCA (Count VI); and unlawful consideration of previous election results in redistricting in violation of § 5-1-115(3), MCA (Count VII). Plaintiffs later stipulated to the dismissal of Counts IV, V, VI, and VII.

¶12 On May 8, 2013, the State filed a motion for change of venue from Wheatland County to Lewis and Clark County. The District Court granted the motion and transferred the proceedings to the First Judicial District, Lewis and Clark County. On July 31, 2013, Plaintiffs filed an amended complaint alleging an additional cause of action: failure to permit public observation of agency deliberations in violation of Article II, Section 9 of the Montana Constitution (Section 9) (Count VIII). The parties filed cross-motions for summary judgment. On December 6, 2013, the District Court issued an order granting the State's motion for summary judgment and denying Plaintiffs' motion for summary judgment. Plaintiffs timely appealed.

**STANDARD OF REVIEW**

¶13 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). We review a district court's conclusions of law to determine whether they are correct and

6

its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9 (citation omitted).

## DISCUSSION

¶14    Section 9 provides: "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. art. II, § 9. The Legislature has promulgated guidelines to protect the Section 9 guarantees at §§ 2-3-201 through -221, MCA (open meeting statutes). Section 8 provides: "The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law." Mont. Const. art. II, § 8. The Legislature has codified guidelines to protect the Section 8 guarantees at §§ 2-3-101 through -114, MCA.

¶15    According to the statutory guidelines, the "actions and deliberations of all public agencies shall be conducted openly," and "[a]ll meetings of public or governmental bodies . . . must be open to the public." Sections 2-3-201, -203, MCA. A "meeting" is "the convening of a quorum of the constituent membership of a public agency . . . to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power." Section 2-3-202, MCA. The public must receive adequate notice and an opportunity for participation "before a final agency action is taken that is of significant interest to the public." Section 2-3-103, MCA.

7

¶16 As indicated in the language in the constitutional provisions, Section 9 is broader in its application than Section 8. *Bryan v. Yellowstone Co. Elem. Sch. Dist. No. 2*, 2002 MT 264, ¶ 25, 312 Mont. 257, 60 P.3d 381. Section 9 applies to both public and governmental bodies. A "public or governmental body" is a group of individuals organized for a governmental or public purpose. *Bryan*, ¶ 25 (citation omitted). There is no dispute that the Commission constituted a "public or governmental body" subject to the strictures of Section 9. Section 8, by contrast, applies only with respect to "governmental agencies."

¶17 "Statutory language must be construed according to its plain meaning, and if the language is clear and unambiguous, no further interpretation is required." *Weber v. Interbel Tel. Coop., Inc.*, 2003 MT 320, ¶ 10, 318 Mont. 295, 80 P.3d 88. When resolving disputes of constitutional construction, we apply the rules of statutory construction and give a broad and liberal interpretation to the Constitution. The intent of the framers of the Constitution controls and is determined from the plain language of the words used. *Bryan*, ¶ 23 (citation omitted).

¶18 With these principles in mind, we turn to Plaintiffs' contentions.

¶19 *1. Did the District Court err in concluding that the Commission did not violate the public's "right to know?"*

¶20 Plaintiffs argue that "[w]hile the Commission went to great lengths during most of its existence to encourage openness and public participation, it missed the mark regarding the last-minute holdover amendment it approved on February 12." Plaintiffs argue that

8

the Commissioners' one-on-one discussions about opening Senate District 9 for Jones should have been observable by the public. According to Plaintiffs, the "right to know" under Section 9 includes the right to observe government deliberations that occur when a majority of the governing members communicate one-on-one amongst themselves regarding a matter within their jurisdiction. Plaintiffs cite cases from other jurisdictions in which courts have adopted this "constructive-quorum" or "walking-quorum" rule. According to Plaintiffs, "[r]ejection of the constructive-quorum rule by this Court would diminish government transparency in Montana" and would mean "Montanans' constitutional right to observe government deliberations will have less force than analogous statutory rights in other states" (emphasis omitted).

¶21 The State counters that Plaintiffs' claim is time-barred because Plaintiffs did not amend their complaint to include a Section 9 claim until July 23, 2013, 139 days after the Commission's February 12 decision. *See* § 2-3-213, MCA ("A suit to void a decision must be commenced within 30 days of the date on which the plaintiff or petitioner learns, or reasonably should have learned, of the agency's decision."). Furthermore, the State contends that the Commission never violated Section 9 because a "quorum" of the Commission did not meet outside of a public meeting and the Commissioners did not "deliberate" as the Commission with respect to the Jones Amendment until the February 12 meeting.

¶22 We agree with Plaintiffs that this claim was timely. It related back to the date of the original pleading because it "assert[ed] a claim or defense that arose out of the

9

conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." M. R. Civ. P. 15(c)(1)(B). Thus, we resolve this claim on the basis of its merits, and not on the basis of the time bar.

¶23 The open meeting statutes "shall be liberally construed," § 2-3-201, MCA, and "apply to a 'meeting,' which occurs upon the 'convening' of a 'quorum' of the 'constituent membership of a public agency.'" *Boulder Monitor v. Jefferson High Sch. Dist. No. 1*, 2014 MT 5, ¶ 19, __ Mont. __, 316 P.3d 848 (citing § 2-3-202, MCA). It is undisputed that the Commission consists of five members; thus, a gathering of three or more members of the Commission constitutes a quorum of the Commission.[2] Other jurisdictions recognize that their open meeting laws do not apply when a quorum is not present. *See e.g. Dewey v. Redevelopment Agency of Reno*, 64 P.3d 1070, 1077-78 (Nev. 2003) (The Nevada Supreme Court declined to find that "back-to-back briefings" of the members of the City of Reno's Redevelopment Agency "created a constructive quorum or serial communication in violation of" Nevada's Open Meeting Law.); *Dillman v. Trustees of Ind. Univ.*, 848 N.E.2d 348, 351 (Ind. 2006) (The court concluded that although the law must be liberally construed, the legislature has specifically defined meeting under the Open Door Law as a gathering of a majority of the governing body, and that without a majority present, no meeting occurs for purposes of the Open Door Law.).

---

[2] Though "quorum" is not defined in the open meeting statutes, it is defined in Black's Law Dictionary as: "[t]he minimum number of members (usu. a majority of all the members) who must be present for a deliberative assembly to legally transact business." *Black's Law Dictionary* 1370 (Bryan A. Garner ed., 9th ed., West 2009).

¶24    We have not expressly addressed the "constructive-quorum" rule before, but we have previously allowed "a member of a public body [to observe] a meeting of a sub-quorum subcommittee" and to ask questions during the meeting because "doing so does not constitute the convening of a quorum." *Boulder Monitor*, ¶¶ 20-21 ("Nothing in the letter or spirit of the open meeting statutes prohibits a person in the position of the fourth member [of the School Board] in this case from attending and observing a meeting of a subcommittee along with any other members of the public.").

¶25    We decline to adopt the "constructive-quorum" rule under the facts presented here. Even liberally construing the statute, we determine that the language of § 2-3-202, MCA, is plain and unambiguous, and that the definition of "meeting" does not include "serial one-on-one discussions."  Plaintiffs disregard as "unfounded" any concern that the "constructive-quorum" rule would prohibit legislators from meeting in the halls of the Capitol and discussing pending legislation.  However, if we accept Plaintiffs' premise that accumulated one-on-one conversations among Commission members violate the open meeting statutes, then so too could the accumulated discussions of legislators. There is no evidence that a majority of Commissioners reached any agreement regarding the Jones Amendment prior to the February 12 meeting, and no decisions were made outside of the public meeting.  In fact, Chairman Regnier testified that "for something to happen with Llew Jones, it required my vote . . . but I wasn't going to make a decision on this until we actually had our meeting and had a discussion about it."  We conclude that the Commissioners' one-on-one discussions prior to the February 12 meeting were not

11

subject to Section 9 because a majority of Commission members never "convened" or "deliberated" as a "public body" outside of a public meeting. Thus, the District Court did not err in concluding that the Commission did not violate the public's "right to know."

¶26   *2. Did the District Court err in concluding that the Commission did not violate the public's right of participation?*

¶27   As stated above, Section 8 applies more narrowly than Section 9. Section 8 applies only to "governmental agencies." Mont. Const. art. II, § 8; Section 2-3-101, MCA. The Legislature has defined an agency as "any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts," excluding "the legislature and any branch, committee, or officer thereof." Section 2-3-102(1)(a), MCA.

¶28   Plaintiffs allege Section 8 applies to the Commission because the Commission is a "separate body" and is not a "branch" or "committee" of the Legislature. Plaintiffs argue the Commission violated the public's right to participate by failing to post any proposed holdover amendments on the Commission's website, failing to provide the public with "sufficient factual detail and rationale" for the Jones Amendment, and effectively denying the public the right to submit written comments on the amendment. The State counters that the Commission is not a governmental agency but is a part of the legislative branch of government because "it legislates directly by passing [and submitting] a final plan for legislative districts" (internal quotation marks omitted). The State points out that the provisions relating to the Commission are placed within Article V of the Montana

12

Constitution (titled "The Legislature"). According to the State, "[r]egardless of where exactly the Commission fits within the legislature, it is clearly part of 'the legislature.'" In the alternative, the State argues that even if the participation statutes did apply to the Commission, the Commission provided sufficient notice.

¶29 As the District Court noted, "[a]lthough the Commission is independent from the legislature, it is clearly a part of the legislative branch of government" for several reasons, including that: its powers and duties are established under Article V of the Montana Constitution; the Commission operates much like an interim legislative committee; and the Legislative Services Division provides the research analysts, attorney, and secretary to staff the Commission and to maintain its website, which is found on the "Legislative Branch" homepage. In *Wheat v. Brown*, 2004 MT 33, 320 Mont. 15, 85 P.3d 765, we determined that the 1972 Constitutional Convention "assigned the task of redistricting to the Commission—an independent, autonomous entity—and limited the Legislature's role to that of making 'recommendations.'" *Wheat*, ¶ 23. It does not follow that the Commission is wholly outside of the legislative branch of government. We also note that prior to the enactment of the 1972 Constitution, redistricting was a function of the Legislature. Under the new constitution, it is incumbent upon the Legislature to select four of the five Commissioners. Moreover, the Commission does not merely implement or administer existing law; it actually makes law, as does the Legislature. Finally, we note that the Commission is not "authorized by law to make

13

rules, determine contested cases, or enter into contracts," which is the role of an "agency" as defined in § 2-3-102(1), MCA.

¶30 Thus, we conclude that the Commission is not a "governmental agency" and is therefore not subject to the requirements of Section 8. We note, however, that even though the Commission was exempt from the participation statutes, the Commission maximized public participation by holding multiple public meetings and by allowing the public to actively engage in the redistricting process. The District Court did not err in determining that the Commission is part of the legislative branch and is not an "agency," and that it is therefore exempt from the statutes promulgating the right of participation.

¶31 *3. Did the District Court err in concluding that the Commission did not violate Plaintiffs' right of suffrage?*

¶32 Section 13 provides: "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Mont. Const. art. II, § 13. The right of suffrage is a fundamental right. *See e.g. State v. Riggs*, 2005 MT 124, ¶ 47, 327 Mont. 196, 113 P.3d 281 (citations omitted) ("A right is 'fundamental' under Montana's Constitution if the right either is found in the Declaration of Rights or is a right 'without which other constitutionally guaranteed rights would have little meaning.'").

¶33 Plaintiffs contend that their right of suffrage was violated because 95% of Senate District 15's population will have to wait six years between senate elections. Defendants counter that Plaintiffs' allegation is not supported by state or federal law, and that in the

14

context of redistricting, the primary concern is with keeping the deviation in population as close to the "ideal deviation" of one person, one vote as possible.[3]

¶34   The District Court stated that "[i]t is an inescapable consequence of the redistricting process that many Montanans will cast their votes in two senate (general) elections over a ten year period," and noted that "there are no statutes or case law requiring [the Commission] to minimize the affected population."  We agree that the shuffling of legislators is a necessary byproduct of the redistricting process when senators serve staggered four-year terms, and voters in 25 districts will inevitably be assigned a "holdover senator" and vote for only two senators in ten years.  We note that Plaintiffs' requested remedy of striking the Jones Amendment would result in voters from another district voting in only two senate elections over the ten-year period.  Thus, the purported violation of the right of suffrage would not be cured at all; it would simply be shifted to another set of voters.  The District Court did not err in concluding that Plaintiffs' suffrage argument is without merit.

## CONCLUSION

¶35   For the foregoing reasons, we affirm the District Court's order granting the State's motion for summary judgment and denying Plaintiffs' motion for summary judgment.

/S/ PATRICIA COTTER

---

[3] Indeed, Article V, Section 14 of the Montana Constitution requires the Commission to create legislative districts that are "as nearly equal in population as is practicable."  Mont. Const. art. V, § 14(1).

15

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE


Justice Beth Baker, concurring.

¶36     I have joined the Court's opinion and write only to share my doubts that the relief sought by the Plaintiffs could have been granted in any event.  The Plaintiffs' complaint asked the District Court to declare "that the Commission's reassignment on February 12, 2013, of Senator Ripley to SD-10 and Senator Hamlett to SD-15 in accordance with the Llew Jones Motion was unlawful."  The State did not raise an argument about the propriety of the relief sought and neither party discussed the court's authority to strike a single amendment from the Commission's final plan.

¶37     Article V, Section 14 of the Montana Constitution vests the Commission with the power to redistrict and reapportion the state into legislative districts.  Following the filing of the Commission's final plan with the Secretary of State, the plan becomes law and the Commission is dissolved.  Mont. Const. art. V, § 14(3).  The Plaintiffs have cited no authority for the proposition that this Court could strike a single amendment made by the Commission in the development of a comprehensive redistricting plan that has become law and the whole of which is not alleged to violate the constitution.

¶38 "[L]egislative reapportionment is primarily a matter for legislative consideration and determination . . . ." *Reynolds v. Sims*, 377 U.S. 533, 586, 84 S. Ct. 1362, 1394 (1964). Without the issue having been raised or briefed by the parties, there is no basis for the Court to address it; but today's opinion should not be taken as a determination that a party may seek relief from one amendment made during the Commission's process of adopting a final redistricting plan.

/S/ BETH BAKER

Justice Laurie McKinnon, concurring.

¶39 I concur in the Court's Opinion. I believe, however, that the Court's citation to and discussion of *Boulder Monitor v. Jefferson High School District No. 1*, 2014 MT 5, 373 Mont. 212, 316 P.3d 848, are unnecessary. In my view, *Boulder Monitor* is factually distinguishable from our resolution of the present case. Moreover, I continue to disagree with the Court's analysis and conclusions in *Boulder Monitor* for the reasons stated in my dissent in that case. *See Boulder Monitor*, ¶¶ 24-39 (McKinnon, J., dissenting). Thus, aside from the citations to *Boulder Monitor*, I otherwise agree with the Court's decision.

/S/ LAURIE McKINNON