FILED

04/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0259

DA 24-0259

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 68

BETH CUMMINGS and DENA BURNHAM JOHNSON,

　　　　Plaintiffs and Appellants,

　　v.

BOB KELLY, ERIC HINEBAUCH, JOE MCKENNEY,
RICK TRYON, and SUSAN WOLFF, in their respective
official capacities as COMMISSIONERS OF THE CITY
OF GREAT FALLS; DAVID DENNIS, in his official
capacity as ATTORNEY FOR THE CITY OF GREAT FALLS;
and THE CITY OF GREAT FALLS, a Political Subdivision
of the State of Montana,

　　　　Defendants and Appellees.

APPEAL FROM:　　District Court of the Eighth Judicial District,
　　　　　　　　In and For the County of Cascade, Cause No. DV-2023-379
　　　　　　　　Honorable Heather Perry, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellants:

　　　　　　Beth Cummings, Self-Represented, Great Falls, Montana

　　　　　　Dena Burnham Johnson, Self-Represented, Great Falls, Montana

　　　　For Appellees:

　　　　　　Jordan Y. Crosby, James R. Zadick, Ugrin Alexander Zadick, P.C.,
　　　　　　Great Falls, Montana

　　　　　　　　　　　　Submitted on Briefs:　January 8, 2025

　　　　　　　　　　　　　　　Decided:　April 2, 2025

Filed:

_____
　　　　　　　　Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Beth Cummings (Cummings) and Dena Burnham Johnson (Johnson) (collectively, Plaintiffs or Appellants) appeal an order from Montana's Eighth Judicial District Court dismissing their petition to annul or void an election providing additional funds for the Great Falls Public Library (Library) and denying them leave to amend their petition.

¶2     We address the following questions on appeal:

1.  *Did the District Court err by dismissing Appellants' petition under M. R. Civ. P. 12(b)(6) for failure to state a legally cognizable claim?*

2.  *Did the District Court abuse its discretion by denying Appellants' motion for leave to amend under M. R. Civ. P. 15(a)(2) based upon its findings that the amendment would be futile and cause Appellees prejudice?*

Affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In 1986, the City of Great Falls (City) adopted a self-governing charter. *See* §§ 7-3-701, et seq., MCA. The Montana Constitution provides that a charter city may "exercise any power not prohibited by this constitution, law, or charter." Mont. Const. art. XI, § 6; §§ 7-1-101, 7-3-702, MCA. Such powers "shall be liberally construed." Section 7-1-106, MCA. This includes the general abilities of a charter city to establish local government, levy taxes, and provide services to residents. Section 7-1-102, MCA. The Charter of the City of Great Falls (Charter) established the Library and permitted the City's support of the Library through taxation. The Charter also included a "Mill Levy Limit," which provided that the City's "total mill levy shall not exceed that allowed to general powers cities of the first class by Montana law, except that the City Commission

2

may levy not more than two (2) additional mills for the purpose of providing additional funds for the operation, maintenance and capital needs of the Great Falls Public Library."

¶4     In April 1993, the City entered into an agreement with the Library's Board of Trustees (Agreement), which delineated authority for policy and management decisions involving the operation of the Library, and which committed the City to providing additional financial support for the Library: "[t]he City of Great Falls agrees to support the library budget in the amount of at least seven (7) mills."  The Agreement was made for a term of one year, and was automatically renewable unless notice of termination was given by either party.  The 7 mills referenced by the Agreement were neither put to a citizen vote nor ever levied for the specific purpose of supporting the Library, but, rather, were levied under the City's general power to tax and allocated as general revenues to the Library pursuant to the Agreement.  Thus, for the following thirty years, the Library received funding from multiple sources, including from the 2 mills designated for the Library by the Charter and revenue from "at least" 7 mills in general revenues pursuant to the Agreement.

¶5     In 2023, the Great Falls City Commission (Commission) initiated an effort to amend the Charter to provide more designated funding for the Library.  Amending the Charter required a majority vote from qualified electors of the City, and the City was responsible for conducting the election as provided in § 15-10-425, MCA (2021).[1]  *See* § 22-1-304, MCA (2021).  Section 15-10-425(1)-(4), MCA (2021), states:

---

[1] Although the election at issue was held in June 2023, the 2021 version of § 15-10-425, MCA, applied, as the amendment to that statute enacted by the 2023 Legislature was not effective until July 1, 2023.  *See* 2023 Mont. Laws ch. 388, § 2.

3

(1) A county, consolidated government, incorporated city, incorporated town, school district, or other taxing entity may impose a new mill levy [or] increase a mill levy that is required to be submitted to the electors . . . by conducting an election as provided in this section.

(2) An election pursuant to this section must be held in accordance with Title 13, chapter 1, part 4 or 5 . . . . The governing body shall pass a resolution, shall amend its self-governing charter . . . [or] increase a mill levy . . . on the approval of a majority of the qualified electors voting in the election. The resolution, charter amendment, or petition must include:

    (a) the specific purpose for which the additional money will be used;
    (b) either:
        (i) the specific amount of money to be raised and the approximate number of mills to be imposed; or
        (ii) the specific number of mills to be imposed and the approximate amount of money to be raised; and
    (c) whether the levy is permanent or the durational limit on the levy.

(3) Notice of the election must be prepared by the governing body and given as provided in 13-1-108. The form of the ballot must reflect the content of the resolution or charter amendment. . . .

(4) If the majority voting on the question are in favor of the additional levy, the governing body is authorized to impose the levy in either the amount or the number of mills specified in the resolution or charter amendment.

¶6     On February 21, 2023, the Commission adopted Ordinance No. 3254 (Ordinance), which proposed amending the Charter's Mill Levy Limit provided in Article I, Section 3, of the Charter, as follows (Charter Amendment):[2]

The total mill levy shall not exceed that allowed to general powers cities of the first class by Montana law, except that the City Commission may levy not more than ~~two (2)~~ <u>seventeen (17)</u> additional mills for the purpose of providing ~~additional~~ funds for the operation, maintenance and capital needs of the Great Falls Public Library.

---

[2] The Ordinance indicated removal of the Charter's existing language by ~~strikeout~~ and additions to the Charter's language by <u>underline</u>.

The Commission subsequently adopted Resolution 10488 (Resolution), which referred the Ordinance to voters. The Resolution included proposed ballot language that provided the Charter Amendment and further stated:[3]

> The foregoing mill levy is permanent and shall continue indefinitely in future fiscal years. This levy is not cumulative, which means the number of mills will not increase over time. This levy is in addition to any other mill levies authorized by Charter or law.
>
> .   .   .
>
> **Shall the City of Great Falls be authorized to amend Article I, Section 3 of the Charter of the City of Great Falls to levy up to 17 mills, an increase of 15 mills, raising approximately $1,594,500 for the purpose of providing funds for the operation, maintenance and capital needs of the Great Falls Public Library.**

The Commission, in accordance with state law,[4] published a Notice of the Library mill levy election (Notice) in the Great Falls Tribune. The Notice ran four times, on May 8, May 12, May 19, and May 26, 2023, reading, in relevant part:

> Notice is hereby given that the Great Falls Public Library Mill Levy Election for the City of Great Falls will be held [o]n Tuesday, June 6, 2023. Electors will consider the following:
>
> This ballot measure asks voters to approve or disapprove a permanent annual levy of up to 17 mills to provide for the operation, maintenance and capital needs of the Great Falls Public Library.

---

[3] This language and bolded emphasis, first contained in the Resolution, is identical to the language as it also appeared on the June 6, 2023, ballot (Ballot).

[4] Section 13-1-108(1), MCA (2021), states:
[A]n election administrator conducting a political subdivision election shall give notice of the election at least three times no earlier than 40 days and no later than 10 days before the election. The notice must be published in a newspaper of general circulation in the jurisdiction where the election will be held . . . . The notice must be given using the method the election administrator believes is best suited to reach the largest number of potential electors.

5

On the Ballot, voters were instructed to mark whether they were "FOR" or "AGAINST" amending the Charter "from two (2) mills to seventeen (17) mills as provided for in Ordinance No. 3254."

¶7      On June 6, 2023, voters passed the Library mill levy authorization by a margin of 619 votes—7,223 votes in favor and 6,604 votes against.  Following the election, City residents Cummings and Johnson[5] filed a petition to annul and set aside or void the election, naming the City Commissioners, the City Attorney, and the City as defendants (Appellees). The petition alleged a serious discrepancy between the number of stated additional mills and the dollar amount associated with the additional mills provided on the Ballot. Specifically, Plaintiffs noted that both the Resolution and Ballot contained an error of $45,000, based on the difference between the assigned value of one mill ($103,300) and the total amount *stated* ($1,594,500) in the Resolution and on the Ballot as being raised by the additional 15 mills.  Plaintiffs explained that 15 mills x $103,300 amounts only to $1,549,500, $45,000 less than stated.  Plaintiffs further asserted claims of breach of contract and violation of their rights of suffrage and due process.  Plaintiffs requested a hearing pursuant to § 7-7-106, MCA.

¶8      Three district court judges recused themselves before the Honorable Heather Perry assumed jurisdiction over the matter in Montana's Eighth Judicial District.  Defendants

---

[5] The District Court noted Plaintiff "Dena Burnham Johnson was previously an active attorney and member of the State Bar of California from 1983 through 2002," but stated that fact played "no role in the Court's analysis."  In appellate briefing, Appellant Johnson clarifies that her membership in the State Bar of California ceased on January 1, 2002.  While we note Johnson's clarification, we likewise conclude that her legal background has no bearing on our analysis of the arguments.

filed a motion to dismiss under M. R. Civ. P. 12(b)(6). After briefing on the motion to dismiss was complete, Plaintiffs filed a motion to amend their petition, proposing to withdraw their claim of breach of duty under the Charter and to add allegations that the City violated various state statutes and provisions of the Charter when conducting the election. Specifically, Plaintiffs' amended petition alleged violations of §§ 7-3-103 and 22-1-304, MCA, stating the ballot question was "NOT the [p]roposed Charter Amendment that was required to be submitted to the voters." On February 27, 2024, the District Court denied Plaintiffs' motion to amend and granted Defendants' motion to dismiss. In its order, the District Court stated it had accepted Plaintiffs' facts as true but concluded nonetheless that Plaintiffs "failed to state any legally cognizable claims" and that amending their petition would be futile. Plaintiffs appeal.

**STANDARD OF REVIEW**

¶9 "A motion to dismiss under Rule 12(b)(6), M. R. Civ. P. has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true." *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316. Whether a petition fails to sufficiently state a claim upon which relief may be granted is a conclusion of law reviewed de novo for correctness under the standards of M. R. Civ. P. 12(b)(6). *Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, ¶ 7, 390 Mont. 12, 407 P.3d 692.

¶10 A district court's interpretation of statute in determining whether a hearing is necessary is a question of law that we review for correctness. *In re Est. of Eddleman*,

7

2025 MT 35, ¶ 10, 420 Mont. 366, 564 P.3d 426 (citing *City of Missoula v. Fox*, 2019 MT 250, ¶ 8, 397 Mont. 388, 450 P.3d 898).

¶11 A denial of a motion to amend a complaint is generally reviewed for abuse of discretion. *Saddlebrook Invs., LLC v. Krohne Fund, L.P.*, 2024 MT 68, ¶ 20, 416 Mont. 150, 546 P.3d 195. "A district court abuses its discretion when 'it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice.'" *Saddlebrook*, ¶ 20 (quoting *Rolan v. New West Health Servs.*, 2017 MT 270, ¶ 10, 389 Mont. 228, 405 P.3d 65). However, "we review de novo whether the movant's proposed amendment would be futile." *Adv. for Sch. Trust Lands v. State*, 2022 MT 46, ¶ 7, 408 Mont. 39, 505 P.3d 825.

## DISCUSSION

¶12 Plaintiffs/Appellants claim their constitutional rights of suffrage and due process of law were violated by various discrepancies and errors committed throughout the Library mill levy authorization process. Specifically, Appellants assert that: 1) the Notice was not reflective of the Ordinance, in violation of § 15-10-425(3), MCA; 2) the Ballot inaccurately stated the increase of 15 mills would result in the collection of approximately $1,594,500 when the correct amount was $1,549,500; and 3) the ballot issue as presented was materially different than the Charter Amendment. Appellants also contend the passage of the mill levy violated Montana laws, including election laws as codified within Title 13 of the Montana Code Annotated (MCA) and § 7-7-105, MCA. We address Appellants' constitutional and statutory claims before considering whether the District Court erred in denying Appellants' motion to amend.

8

¶13   *1. Did the District Court err by dismissing Appellants' petition under M. R. Civ. P. 12(b)(6) for failure to state a legally cognizable claim?*

¶14   Article II, Section 13, of the Montana Constitution declares: "[a]ll elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Suffrage is a fundamental right. *Willems v. State*, 2014 MT 82, ¶ 32, 374 Mont. 343, 325 P.3d 1204. We have previously held "'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Burns v. Cty. of Musselshell*, 2019 MT 291, ¶ 19, 398 Mont. 140, 454 P.3d 685 (quoting *Big Spring v. Jore*, 2005 MT 64, ¶ 18, 326 Mont. 256, 109 P.3d 219).

¶15   Appellants acknowledge they were not prevented from voting in the Library mill levy election. Instead, Appellants claim they were denied "from obtaining reliable, unambiguous, and consistent information sufficient to enable them to make thoughtful, knowledgeable, and fiscally responsible personal voting choices," resulting in confusion. Both at the district court level and in briefing before this Court, Appellants asserted as fact that "[t]he serious election irregularities and defects . . . necessarily did affect the outcome of the Levy Election" and that the material mistakes of fact "rendered the election results unascertainable." Further, Appellants claimed "[t]he series of election irregularities and defects in the Levy Election procedure . . . affected the free and intelligent casting of votes, rendering the Levy Election invalid." The District Court stated that many of Appellants' asserted facts were difficult to distinguish from their legal arguments but, relying on *Burger v. Judge*, 364 F. Supp. 504, 511 (D. Mont.), *aff'd*, 414 U.S. 1058 (1973), reasoned that

9

Appellants' votes were not debased or diluted because they were neither deprived a right to vote nor misled by the "supposed mistakes" they claimed existed on the Ballot.

¶16   Reviewing the record anew, we conclude the District Court correctly determined Appellants' right of suffrage was not violated.  A fact is an "actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Fact*, *Black's Law Dictionary* (12th ed. 2024).  Appellants assert numerous facts, which we take as true, including the apparent mistake regarding the calculation of the total dollar amount to be raised from the levy of the proposed additional mills, as well as the absence of specific information given to voters regarding the City's existing commitment to support the Library with at least 7 mills per annum of general revenue pursuant to the Agreement.  However, we do not accept as fact Appellants' proffered legal conclusions regarding the consequences that followed therefrom—that the defects "affected the free and intelligent casting of votes," "render[ed] the Levy Election invalid," or made election results "unascertainable."  Given that Appellants acknowledge their free exercise of the right to vote was not wholly prohibited, we consider whether Appellants alleged facts demonstrating their vote was debased or diluted, and we conclude they do not.

¶17   It is clear voters were informed they were voting to amend the Charter to permanently authorize a levy of "up to 17 mills, an increase of 15 mills . . . for the purpose of providing funds for the operation, maintenance and capital needs of the [Library]," and that this ballot issue did not materially differ from the language of the proposed Charter Amendment.  Appellants argue the City's failure to include the 7 mills allocated to the Library pursuant to the Agreement within the description of mills designated for the

10

Library by the Charter Amendment vote, thus raising the potential support for the Library to a total of 24—not 17—mills, misled voters. However, the 7 mills of support committed to the Library by the City under the Agreement were not levied for earmarked funding of the Library, but rather constituted funding discretionary with the City without further voter approval and, therefore, was not a part of the Charter Mill Levy Limit or the Charter Amendment. While the Ordinance, Resolution, and Ballot could well have permissibly advised that the 17 mills authorized by the levy for earmarked support of the Library would be in addition to 7 mills of discretionary funding contractually committed by the City to the Library, the omission of that information does not provide a basis to invalidate the election on the Charter Amendment. *Montanans Against Tax Hikes v. State*, 2018 MT 201, ¶ 13, 392 Mont. 344, 423 P.3d 1078 ("[w]e will not invalidate a ballot statement simply because a better one could be written"). Nothing interfered with voters' free exercise of the franchise or so misled voters as to the meaning of the Charter Amendment such as to dilute or debase their vote. The Ballot language did state that "[t]his levy is in addition to any other mill levies authorized by Charter or law." Thus, we conclude Appellants' right of suffrage was not violated on the basis of Appellants' claims based on this language.

¶18 Appellants also contend these concerns constituted a due process violation. The due process provision in Article II, Section 17, of Montana's Constitution states: "[n]o person shall be deprived of life, liberty, or property without due process of law." "Due process is satisfied if the voters are informed by or with the ballot of the subject of the amendment, are given a fair opportunity by publication to consider its full text, and are not deceived by the ballot's words." *State ex rel. Mont. Citizens for the Pres. of Citizen's Rights v.*

11

*Waltermire*, 227 Mont. 85, 90, 738 P.2d 1255, 1258 (1987). "[V]oters may not be misled to the extent they do not know what they are voting for or against." *State ex rel. Mont. Citizens for the Pres. of Citizen's Rights*, 227 Mont. at 90, 738 P.2d at 1258. This Court has held a ballot statement that contains a "mathematical misstatement" is not misleading so long as it "captures the purpose and fiscal impacts in summary fashion, and is sufficient to inform voters of the implication of a vote for or against the measure." *Montanans Against Tax Hikes*, ¶¶ 10, 11 (upholding ballot statement language that included a mathematical misstatement).

¶19 Here, neither the process nor the substantive language of the election-related material constituted a due process violation. The Commission passed the Ordinance and Resolution in accordance with § 15-10-425, MCA. The Ordinance, Resolution, and Ballot each stated: 1) the specific purpose for the increase of authorized mills (providing funds for the "operation, maintenance and capital needs of the Great Falls Public Library"); 2) the specific number of mills to be authorized ("up to seventeen (17)"); 3) the approximate amount of money to be raised ("approximately $1,594,500"); and 4) that the levy was permanent. The Notice was published in the local newspaper within the timeframe required by § 13-1-108(1), MCA. While the Notice was not identical to the Resolution, it reflected the content of the Resolution by explaining that voters would be able to "approve or disapprove a permanent annual levy of up to 17 mills to provide for the operation, maintenance and capital needs" of the Library. Both the Resolution and Ballot informed voters that the Charter Amendment, if passed, would result in "an increase of 15 mills, raising approximately $1,594,500." As noted above, the "approximate" amount to be

12

raised did not align with the number of mills listed, resulting in an overstatement of the amount proposed by $45,000. The District Court noted that the mathematical error "was fairly minor ($45,000/$1,594,500 = 3%)." The 3% error, preceded by the word "approximately," amounted to a smaller error than this Court upheld in *Montanans Against Tax Hikes* and did not mislead voters to the extent they did not know what they were voting for. As the District Court summarized, the Charter Amendment "unequivocally sought approval among Great Falls City voters for an increase in funding to the Great Falls Library" and was the topic of "reporting and discussion throughout Great Falls, and even the State of Montana, for a significant period of time in the first half of 2023." The District Court correctly concluded Appellants suffered no due process violation.

¶20 In their petition, Appellants claimed the City and Commission broadly violated state election laws, entitling them to a hearing within 5 days under §§ 7-7-105, -106, MCA. Section 7-7-105, MCA, provides that "[n]o action may be brought for the purpose of restraining the issuance and sale *of bonds or other obligations* by any county, city, town, or political subdivision of the state or *for the purpose of restraining the levy and collection of taxes for the payment of such bonds or other obligations* . . . ." Section 7-7-105(1), MCA (emphasis added). It continues: "[a]ny elector . . . may contest a bond election" if "any official charged with a duty under the election laws violated any of the provisions of Title 13 *relating to bond elections*." Section 7-7-105(2)(a)(iii), MCA (emphasis added). Appellants contend "other obligations" pertain to taxes like the Library mill levy, but their rendering of the statute contradicts the text as written. Tax levies are not issued or sold like bonds, and local governments do not collect taxes *for the payment of* levied mills. In

13

simple terms, the Library mill levy was not a bond election. The District Court correctly denied the request, explaining the section of code relied upon by Appellants was "entirely irrelevant to this action and fact pattern."

¶21 Appellants argue the District Court improperly dismissed their claims for relief under §§ 13-35-107, -108, MCA. Section 13-35-107(1)(a), MCA, provides: "If a court finds that the violation of any provision of this title by any person probably affected the outcome of any election, the result of that election may be held void and a special election held at least 85 days after the finding." Section 13-35-108, MCA, authorizes a district court to "enjoin any person to prevent the doing of any prohibited act or to compel the performance of any act required by the election laws." Mill levy elections are primarily governed by Title 15, MCA. As stated in § 15-10-425, MCA, mill levy elections must comply with the requirements of "Title 13, chapter 1, part 4 or 5" and notice must be given to electors in the form provided in § 13-1-108, MCA. However, Appellants did not challenge the *publication* of the Notice, the registration of voters, or the City's facilitation of voting. Instead, Appellants' pleadings concerned the City's amendment of the Charter's Mill Levy Limit, which, as the District Court noted, "is **not** a function either required or prohibited by Montana's election laws." (Emphasis in original.) Nowhere else do Appellants state with any particularity additional provisions of Title 13 breached by Appellees. Thus, the District Court did not err in dismissing Appellants' claims under §§ 13-35-107, -108, MCA.

¶22 Appellants suffered no due process or right of suffrage violation, and they did not plead facts sufficient to support their allegations of election law violations. For the

14

foregoing reasons, we conclude the District Court correctly determined Appellants failed to advance any legally cognizable claims for which relief could be granted.

¶23    *2. Did the District Court abuse its discretion by denying Appellants' motion for leave to amend under M. R. Civ. P. 15(a)(2) based upon its findings that the amendment would be futile and cause Appellees prejudice?*

¶24    Appellants further challenge the District Court's denial of their motion for leave to amend their petition. M. R. Civ. P. 15(a)(2) provides that, after 21 days has elapsed since service of a pleading or motion, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." It is the general policy of this state that district courts should permit amended pleadings. However, a district court is not required to allow an amendment when it finds the motion creates "undue delay, is made in bad faith, is based upon a dilatory motive on the part of the movant, or is futile, or [that] the party opposing the amendment would incur substantial prejudice as a result of the amendment." *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 64, 358 Mont. 474, 247 P.3d 244 (internal quotations omitted). It is ultimately within the discretion of the district court to deny a motion to amend. *Kershaw v. Montana Dep't of Transp.*, 2011 MT 170, ¶ 25, 361 Mont. 215, 257 P.3d 358; *Bitterroot Int'l Sys., Ltd. v. W. Star Trucks, Inc.*, 2007 MT 48, ¶ 50, 336 Mont. 145, 153 P.3d 627.

¶25    Appellants filed their motion to amend the petition on November 7, 2023, nearly three months after filing their original petition and one month after briefing concluded on Appellees' motion to dismiss. Appellees opposed the motion, thus requiring Appellants to obtain leave of court to amend. *See* M. R. Civ. P. 15(a)(2). In their amended petition, Appellants sought to correct minor errors, withdraw their breach of duty claim, and

15

advance additional legal arguments based on "information that was available before they filed their original petition but that was only discovered after they had filed their petition." Appellants newly claimed that 1) under §§ 7-3-103 and 22-1-304, MCA, the Charter Amendment needed to be submitted to voters in a manner separate from the mill levy vote; 2) the City failed to give proper notice of the Charter Amendment under § 7-1-4127, MCA; and 3) the City was required to keep the word "additional" within the at-issue Charter section. In evaluating Appellants' motion for leave to amend, the District Court explained:

> [T]his Court is firmly convinced that any attempts to amend this matter would be futile. While Plaintiffs aver that they wish to add additional allegations that have come to light since their initial filings, correct minor errors, and simplify/clarify their allegations by amending their Petition, this Court remains thoroughly unconvinced that any of the proposed amendments would make this matter legally sound. . . . [The] Motion for Leave to Amend at this point would cause Defendants substantial prejudice. Defendants have already retained counsel, filed and thoroughly briefed their Motion to Dismiss, and filed and thoroughly briefed their opposition to amendment of the Petition. Defendants have thus already devoted substantial time to this case . . . . Based on that reality, the Court finds here that the interests of justice actually weigh in favor of denying Plaintiff's Motion for Leave to Amend.

¶26 Upon de novo review of the record, we conclude Appellants' amended petition was futile because it did not present an actual or present controversy. *Adv. for Sch. Trust Lands*, ¶ 36. First, Montana law requires any proposed amendment to a city charter be submitted "to the electors of the local government" and further provides that the amendment may be proposed "by ordinance." Sections 7-3-103(1), -(2)(b), 7-3-149(1)(b), MCA. As discussed above, there is no doubt voters were aware they were amending the Charter to increase the Mill Levy Limit. Since statute provides a mechanism for amending a city charter following the adoption of a local government ordinance, it was not necessary for

16

the City to conduct separate elections for 1) whether the Charter could be amended and 2) the Commission's proposed Charter Amendment to increase the Mill Levy Limit. The Ballot language clearly referenced both the purpose to amend the Charter and the increase in levied mills and did not violate Title 7. Next, § 7-1-4127, MCA, is inapplicable to the matter at hand because the section applies to publication of notice for public meetings, not elections.[6] As is undisputed on appeal, the law governing the Notice for the mill levy election is § 13-1-108(1), MCA, and, as we noted, there is no evidence suggesting the Notice failed to comply with this section of code. Finally, as we explained, the exclusion of the word "additional" within the Charter Amendment did not unreasonably interfere with the electors' ability to understand the consequences of their vote. "It is not an abuse of discretion to deny a motion to amend for futility when it is clear that the complaint would not be saved by the amendment." *Adv. for Sch. Trust Lands*, ¶ 36. Appellants' amended petition was, indeed, futile and the District Court's denial of their motion to amend did not constitute an abuse of discretion.

¶27 Further, given the need for planning and implementation of the election results, the District Court did not abuse its discretion in denying the motion on the ground of substantial prejudice to Appellees. "In determining whether an amendment would cause undue prejudice, a court should balance the prejudice suffered by the opposing party

---

[6] The inapplicability of this section to mill levy elections was further clarified by the 2023 Legislature, which amended § 7-1-4127, MCA, to read: "(1) A municipality shall comply with the notice requirements of 2-3-103, including *publication of an agenda prior to a meeting*." *See* 2023 Mont. Laws ch. 396, § 3 (emphasis added). The publication requirement in § 2-3-103, MCA, deals exclusively with the publication of an agenda for a public meeting, not notice of an election. *See* §§ 2-3-103(1)(b), -202, MCA.

'against the sufficiency of the moving party's justification of the delay.'" *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 14, 393 Mont. 332, 430 P.3d 522 (quoting *Rolan*, ¶ 16). Undue prejudice exists when the opposing party expends "substantial effort and expense in the course of the dispute that would be wasted if the moving party were allowed to proceed on a new legal theory." *Saddlebrook*, ¶ 28 (internal quotations and citations omitted). Granting Appellants' leave to amend would have, in essence, returned the litigation to square one, allowing Appellants to circumvent the motion to dismiss after Appellees had expended significant time and resources briefing the issues. Such prejudice is not outweighed by Appellants' desire to correct minor errors and bring non-cognizable claims based on information which they admit was available at the time they filed the original petition. Thus, we conclude the District Court did not abuse its discretion in denying Appellants' motion for leave to amend.

¶28 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

18