FILED

04/02/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0246

DA 23-0246

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 68

SADDLEBROOK INVESTMENTS, LLC,
as Assignee of Stuart M. Simonsen,

       Plaintiff and Appellant,

   v.

KROHNE FUND, L.P.,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 15-0391
Honorable Jessica T. Fehr, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           T. Thomas Singer, Amanda G. Hunter, Greyson D. Hill, Hall & Evans, LLC, Billings, Montana

      For Appellee:

           Steven L. Stockdale, Matthew B. Gallinger, Gallinger & Stockdale Law Firm, LLC, Billings, Montana

Submitted on Briefs:  January 10, 2024

Decided:  April 2, 2024

Filed:

_____
                 Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Saddlebrook Investments, LLC (Saddlebrook), assignee of Stuart Simonsen, appeals the order of the Montana Thirteenth Judicial District Court, Yellowstone County, granting summary judgment in favor of Krohne Fund, L.P. (Krohne Fund) on Saddlebrook's claims of malicious prosecution and abuse of process. We restate the issues on appeal as follows:

1. *Did the District Court err when it amended the scheduling order and allowed Krohne Fund to file a motion for summary judgment asserting an unpled affirmative defense of judicial estoppel well after all pretrial deadlines had passed?*

2. *Did the District Court err in granting summary judgment in favor of Krohne Fund on Saddlebrook's claims for malicious prosecution and abuse of process based on its determination that Saddlebrook's claims were barred by judicial estoppel?*

¶2 We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Simonsen developed a proprietary, algorithm-based securities trading software known as Xynaquant.[1] Around 2007, Simonsen met Anthony Birbilis, a commodities trader who would later partner with Simonsen to form Kapidyia Capital Partners, LLC (Kapidyia), to offer account management services utilizing Xynaquant. In August 2011, Axel Krohne, the manager of Krohne Fund, was introduced to Simonsen through Krohne's friend Sean Wright. Birbilis provided a marketing presentation of the Xynaquant algorithm to Krohne, and Krohne was impressed. Shortly thereafter, Krohne signed a managed account agreement that gave Kapidyia discretionary authority over account trades in

---

[1] Earlier versions of the program were called i90 and Jarvis.

2

Krohne Fund's account. Within approximately two months, Krohne Fund increased its investment to a notational value of $15,000,000 and Kapidyia took a quarterly fee of $75,000.

¶4      In early September, Birbilis provided training on Xynaquant to Krohne and Wright. Simonsen alleged Wright intended to learn how to reverse engineer the Xynaquant program and that Axel Krohne and Krohne Fund were aware of Wright's intentions. Simonsen further alleged that Wright shared his information with David Tolliver (Tolliver). That month, Wright and Tolliver tried to set up a meeting with Simonsen to discuss a business venture that would acquire Xynaquant; Simonsen ignored the request.

¶5      Later in September, Krohne noted a large loss of over $600,000 in the account. Nervous about the loss, in late October and the beginning of November, Krohne conducted his own "back test" of the performance of his account within all Xynaquant parameters. Krohne could verify only a loss of approximately $220,000 by simulating the Xynaquant trades. Later in November, Krohne withdrew his funds from trading in the program.

¶6      In January 2012, Krohne Fund filed suit against Simonsen in the U.S. District Court for the District of Montana, asserting breach of contract claims allegedly arising from Simonsen manually trading Krohne Fund's investment rather than using the algorithm.[2] Following his initial response to the complaint, in May 2013, Simonsen sought leave of the federal district court to file an amended answer to assert claims against Krohne Fund and

---

[2] Krohne Fund amended its complaint in March 2012, which alleged conduct on the part of Simonsen and/or his affiliated company Kapidyia to include allegations of common law fraud, breach of contract, promissory estoppel, negligent misrepresentation, and constructive trust.

3

third parties for contractual breaches, misappropriation of trade secrets, conversion, and conspiracy. His motion was denied, and the case was set for trial in January 2014.

¶7 A few days before trial, the federal court case was stayed when Simonsen filed for bankruptcy in the United States Bankruptcy Court for the District of Montana. The following month, Simonsen filed his summary of schedules in the bankruptcy. Simonsen listed his federal suit under pending litigation and Krohne Fund as a potential creditor for the breach of contract claim. Under "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims[,]" Simonsen listed only "COUNTERCLAIM AGAINST BDS QUANT CAPITAL LLC[.]"

¶8 Krohne Fund moved to lift the stay on the federal court proceedings. The motion was granted and Krohne Fund's suit proceeded to a bench trial in June 2014. The court denied Krohne Fund's claims and Krohne Fund subsequently appealed to the Ninth Circuit Court of Appeals. Simonsen cross-appealed, seeking review of the federal court's decision regarding his motion to amend his answer and file counterclaims and third-party claims.

¶9 In August 2014, while the Ninth Circuit appeals were pending, Darcy Crum, as Trustee of Simonsen's bankruptcy (Trustee), filed an adversary complaint against entities in which Simonsen had ownership, including Grizzly Peak, LP, (Grizzly Peak).[3] The Trustee alleged that Simonsen used those entities to transfer and hide or remove his

---

[3] Grizzly Peak is an Arizona limited partnership created by Simonsen in 2008, which transacts business in Montana. Ownership in Grizzly Peak was initially held by Simonsen (1%), Simonsen's then-wife, Marie (1%), and the RLM Investments Trust (98%), an entity created by Simonsen on the same date as Grizzly Peak.

4

personal and business assets from the reach of creditors while at the same time retaining control over and using those assets and entities for his or his family's personal benefit.

¶10 In April 2015, Simonsen[4] filed suit in the Montana Thirteenth Judicial District Court, Yellowstone County, against Krohne Fund and other defendants for breach of contract; misappropriation of trade secrets; conversion; malicious prosecution; abuse of process; breach of duties as member of LLC; tortious interference; misrepresentation/fraud; and conspiracy.

¶11 In March 2016, Simonsen entered a global settlement of the adversary complaint with the Trustee. As part of the consideration exchanged in that agreement, Grizzly Peak agreed to pay $400,000 to the Trustee, and the Trustee agreed that "any and all claims of the Trustee against Defendants and any other person or entity, known or unknown, will be assigned to Grizzly Peak, LP or its designee, excepting only" the Trustee's claims against Simonsen and seven named entities and persons other than Krohne Fund. In April 2016, the Bankruptcy Court approved the settlement agreement, and the adversary proceeding was dismissed.

¶12 In December 2016, Simonsen's counsel contacted the Trustee to determine whether she was claiming any interest in the appeal before the Ninth Circuit. The Trustee stated she had no interest in the appeal. She moved to abandon the claim, and the Bankruptcy Court approved her request.

---

[4] As discussed below, T. Thomas Singer, attorney for both Simonsen and Saddlebrook, maintains that this was error and acknowledges that the complaint should have been filed by the Trustee as the real party in interest.

¶13    In March 2017, the Ninth Circuit affirmed the dismissal of Simonsen's claims and remanded the case to the Montana Federal District Court on claims Krohne had asserted against Simonsen and Kapidyia.  Simonsen moved for summary judgment, which was granted in July 2017, with the judgment entered in October 2017.  Krohne Fund voluntarily dismissed the claims against Kapidyia at the end of December 2017, and the federal litigation ended.

¶14    Grizzly Peak assigned its assets to Saddlebrook in December 2017 as part of Simonsen's marital settlement agreement.  In March 2018, Saddlebrook filed an amended complaint against Krohne Fund, Krohne, Wright, Birbilis, and Tolliver on claims of misappropriation of trade secrets; malicious prosecution; abuse of process; breach of duties as member of LLC; tortious interference; misrepresentation/fraud; and conspiracy. Tolliver and Krohne were dismissed due to lack of personal jurisdiction and insufficient service of process, respectively.  In April 2018, Krohne Fund filed a motion to dismiss for lack of personal jurisdiction, which was denied.  Although Birbilis participated actively in the early stages of the litigation, the court later entered default judgment against him, which we recently affirmed.  *Saddlebrook Inv., LLC v. Krohne Fund, L.P.*, 2024 MT 45N.

¶15    In December 2018, the Bankruptcy Court issued its final decree closing Simonsen's case.

¶16    Krohne Fund filed its answer to Saddlebrook's complaint in December 2019.  In January 2022, Krohne Fund sought leave from the District Court to file a motion for summary judgment based on the grounds of judicial estoppel arising from Simonsen's failure to update his bankruptcy schedules to disclose his claims before the District Court

6

against Krohne Fund for malicious prosecution and abuse of process. Krohne Fund stated in its motion:

> During the pendency of this matter, Krohne Fund was previously represented by Tyler T. Dugger. Mr. Dugger left Tolliver Law Firm at the end of December 2021. The Court set a Motion for Summary Judgment deadline of June 1, 2021. However, the undersigned recently filed a Notice of Substitution of Counsel and Consent on the 13th day of January 2022 . . . . In the process of reviewing the documents related to this matter and correlated documents that have become available to the undersigned since becoming counsel of record in this matter, the issue of judicial estoppel has arisen based upon and [sic] adversary complaint filed during Simonsen's bankruptcy.

¶17 Following a hearing, "[h]aving reviewed Krohne Fund, L.P.'s motion for leave to file a late motion for summary judgment, and based on the good cause presented in the filings as well as at oral argument," the court allowed the filing of Krohne Fund's late motion for summary judgment. In its summary judgment motion, Krohne Fund argued that Simonsen was barred by the principle of judicial estoppel from bringing his claims against Krohne Fund because they were not disclosed as an asset during Simonsen's bankruptcy. Saddlebrook then sought leave to file a cross-motion for summary judgment on the affirmative defense of judicial estoppel, which the court allowed.

¶18 The District Court granted Krohne Fund's motion for summary judgment and denied Saddlebrook's motion. The court found that "Simonsen had actual knowledge of his claims against Krohne Fund during the bankruptcy proceedings. Therefore, his intentional decision to not include such claims within his bankruptcy schedules and disclosures constituted an inconsistent position done to deceive the Bankruptcy Court." The court further determined that "Simonsen not only had actual knowledge of the claims

during the bankruptcy proceeding, but he actively assigned them to Grizzly Peak Limited Partnership."

## STANDARDS OF REVIEW

¶19 "We review a district court's ruling on a motion for summary judgment de novo, applying the same standards under M. R. Civ. P. 56 as the district court." *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952 (citation omitted). "Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Kucera*, ¶ 6 (citation omitted). "We view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in their favor." *Kucera*, ¶ 6 (citation omitted).

¶20 We review a district court's decision on a motion to amend for an abuse of discretion. *Rolan v. New W. Health Servs.*, 2017 MT 270, ¶ 10, 389 Mont. 228, 405 P.3d 65 (citation omitted). "A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice." *Rolan*, ¶ 10 (citation omitted).

## DISCUSSION

¶21 *1. Did the District Court err when it amended the scheduling order and allowed Krohne Fund to file a motion for summary judgment asserting an unpled affirmative defense of judicial estoppel well after all pretrial deadlines had passed?*

¶22 Saddlebrook first asserts that the District Court abused its discretion when it allowed Krohne Fund to file a motion for summary judgment after pretrial deadlines had passed. Saddlebrook contends that Krohne Fund lacked reasonable justification or explanation for not asserting the judicial estoppel defense earlier. The District Court's order, according to

8

Saddlebrook, lacked an explanation for granting Krohne Fund leave and unduly prejudiced Saddlebrook.

¶23    Krohne Fund responds that the District Court carefully considered all of the facts and circumstances of this case, entertained full briefing, and held oral argument with the parties before permitting Krohne Fund to amend its answer.  It references our decision in *Eagle Ridge Ranch L.P. v. Park County*, 283 Mont. 62, 68-69, 938 P.2d 1342, 1346 (1997), in which we concluded that undue prejudice existed when the opposing party already had expended "substantial effort and expense" in the course of the dispute that "would be wasted" if the moving party were allowed to proceed on a new legal theory.  Krohne Fund argues Saddlebrook has not expended substantial effort and expense because there had been little discovery in the matter and no depositions were taken and, therefore, Saddlebrook cannot establish prejudice from Krohne Fund's motion.

¶24    Montana Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or court's leave.  The court should freely give leave when justice so requires."  "However, this does not mean that a court must automatically grant a motion to amend."  *Rolan*, ¶ 15 (quoting *Kershaw v. Mont. Dep't of Transp.*, 2011 MT 170, ¶ 25, 361 Mont. 215, 257 P.3d 358) (internal quotation omitted).  Circumstances justifying a court's denial of a motion to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc."  *Rolan*, ¶ 15 (quoting *Bitterroot Int'l Sys. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 50, 336 Mont. 145, 153

9

P.3d 627). An opportunity to amend a pleading is not appropriate when the party opposing the amendment would incur substantial prejudice because of the amendment. *Peuse v. Malkuch*, 275 Mont. 221, 227, 911 P.2d 1153, 1156 (1996) (citing *Kearns v. McIntyre Constr. Co.*, 173 Mont. 239, 248, 567 P.2d 433, 438 (1977)). "[A] district court should balance the alleged prejudice to the opposing party against the rationale of the party seeking leave to amend." *Rolan*, ¶ 20.

¶25    "[N]ew counsel does not excuse an inopportune request for amendment when those defenses were available to original counsel." *Rolan*, ¶ 19 (citing *Peuse*, 275 Mont. at 227, 911 P.2d at 1156). The only reasoning Krohne Fund provided, at the District Court and on appeal, for its late motion on the judicial estoppel defense is that it obtained new counsel. "The fact that the new attorney 'discovered' additional defenses not contemplated by the original attorney does not excuse an inopportune request for amendments when those defenses were available to the original attorney." *Peuse*, 275 Mont. at 227, 911 P.2d at 1156. Krohne Fund's judicial estoppel defense was available when the original attorney filed its answer. Further illustrating that Krohne Fund could have asserted the affirmative defense in its answer, in April 2018—prior to Krohne Fund's answer—Birbilis filed a motion to dismiss raising the issue of judicial estoppel. Krohne Fund's arguments do not justify its delay in moving to amend the answer.

¶26    This does not end the inquiry, however, as we also consider prejudice to Saddlebrook by allowing the late amendment. "In determining whether an amendment would cause undue prejudice, a court should balance the prejudice suffered by the opposing party against the sufficiency of the moving party's justification of the delay." *Rolan*, ¶ 16

10

(citation and internal quotation omitted). We concluded in *Rolan* that the plaintiffs suffered undue prejudice when the trial court allowed amendment to the defendant's answer to allege that the policy at issue was an Employee Retirement Income Security Act policy and that all state law claims were preempted by federal law. *Rolan*, ¶¶ 5-6, 23. The defendant filed its motion after nearly four years of active litigation, including a deposition at which its representative had stated that Rolan's benefit plan was "not a properly constituted ERISA plan," a class had been certified and upheld on appeal, and the class action was based entirely on state-law claims. *Rolan*, ¶¶ 4-6. The parties also had conducted extensive discovery since the filing of the complaint. *Rolan*, ¶ 21. We determined that the district court failed to conduct an inquiry into whether Rolan and the class she represents would be prejudiced. *Rolan*, ¶ 17. "Clearly the District Court allowed amendment purely because the defense would apply." *Rolan*, ¶ 17. Had the court conducted a proper inquiry into undue prejudice, class certification would have been the dispositive issue, as it was based on state-law claims.

> Specifically, Rolan and her class alleged New West had systematically violated their state law made-whole rights. New West's amendment could de-certify the class, forcing Rolan and the class to either seek re-certification based on ERISA claims or proceed alone, ten years after Rolan's injury and more than seven years after she filed suit. The District Court failed to consider the effect of the amendment on the class.

*Rolan*, ¶ 22.

¶27 Here, in contrast, the District Court inquired about potential prejudice to Saddlebrook at the hearing on Krohne's motion to amend the scheduling order. The court's determination that leave to amend was justified by "the good cause presented in the filings

11

as well as at oral argument," though cursory, implies that it considered prejudice, which both parties argued. To the extent Saddlebrook challenges that ruling on appeal, we consider the balancing of prejudice on the basis of the parties' submissions before the District Court.

¶28 We have held that undue prejudice exists when the opposing party expended "substantial effort and expense" in the course of the dispute that "would be wasted" if the moving party were allowed to proceed on a new legal theory. *Rolan*, ¶ 16 (citing *Eagle Ridge Ranch*, 283 Mont. at 68-69, 938 P.2d at 1346). Krohne Fund argued at the hearing on its motion that Saddlebrook had not expended substantial effort and expense because there had been no depositions in this matter, no discovery issued by Saddlebrook to Krohne Fund, and little discovery issued to Saddlebrook from Krohne Fund. Saddlebrook, in its response to Krohne Fund's motion, stated that Krohne Fund had three years to serve written discovery, take depositions, and file dispositive motions, and there already was extensive discovery and trial transcripts from Krohne's federal case. Saddlebrook thus relied primarily on the parties' combined litigation history rather than on substantial effort and expense it had expended in this case.

¶29 In *Peuse*, we recognized that a party's prolonged delay in adopting a new legal theory is prejudicial to the opposing party, particularly when a party waits until after the opposing party files a motion for summary judgment. *Peuse*, 275 Mont. at 228, 911 P.2d at 1157. Krohne Fund argued at the hearing that its motion would not cause undue delay because "the matter is likely to be continued" and Saddlebrook was able to adequately

respond to its motion. Further, Krohne Fund noted that, unlike in *Peuse*, Saddlebrook had not yet filed a motion for summary judgment.

¶30 Saddlebrook points out correctly that this case has been ongoing for many years, having been filed in 2015. But unlike in *Rolan*, there was not active litigation during all of those years. Saddlebrook did not serve Krohne Fund with the complaint until nearly three years after Simonsen first filed the complaint—after the federal court case had concluded. The first year following service involved primarily issues of personal jurisdiction and service, which the District Court resolved in December 2019. Nearly another year went by while Birbilis unsuccessfully sought supervisory control from this Court to reverse the District Court's denial of his motion to dismiss. *See Birbilis v. Thirteenth Judicial District Court*, No. OP 20-0428 (Or. Sept. 15, 2020). By the time Krohne Fund obtained new counsel and moved to amend its answer in January 2022, Saddlebrook had not conducted extensive discovery or filed dispositive motions. Though Saddlebrook cited the ten-year history of litigation between the parties, that delay largely occurred from the federal courts' refusal to allow Simonsen's claims to be pursued in Krohne Fund's action against him. Saddlebrook did not show how it would be prejudiced by the amendment of Krohne Fund's answer except by having to defend against the judicial estoppel argument.

¶31 On balance, we conclude that the District Court did not exceed the bounds of reason when it determined that Krohne Fund should be permitted to amend its answer.

¶32    *2. Did the District Court err in granting summary judgment in favor of Krohne Fund on Saddlebrook's claims for malicious prosecution and abuse of process based on its determination that Saddlebrook's claims were barred by judicial estoppel?*

¶33    Saddlebrook contends that the District Court erred by treating Simonsen and Saddlebrook interchangeably, and therefore its application of the factors of judicial estoppel is fundamentally flawed. Krohne Fund responds that under our precedent in *Kucera*, Simonsen had a duty to disclose his claims for malicious prosecution and abuse of process during the duration of his bankruptcy proceeding, and his failure to disclose the claims constitutes an inconsistent position that bars Saddlebrook from pursuing the claim after Simonsen's discharge from bankruptcy.

¶34    "Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process from manipulation by litigants who seek to prevail, twice, on opposite theories." *Kucera*, ¶ 9 (citing *State v. Darrah*, 2009 MT 96, ¶ 12, 350 Mont. 70, 205 P.3d 792). Practically, it precludes a party to an action from taking a position inconsistent with the party's prior judicial declarations. *Kucera*, ¶ 9 (citing *Darrah*, ¶ 12).

¶35    As a threshold consideration, the Court must determine whether the party being estopped sought to intentionally manipulate the courts by taking inconsistent positions; the doctrine does not apply when a party's position was based on inadvertence or mistake. *Kucera*, ¶ 9 (citing *Dovey v. BNSF Ry.*, 2008 MT 350, ¶ 16, 346 Mont. 305, 195 P.3d 1223). We then examine the following factors to determine whether a party is judicially estopped from raising a certain claim:

   (1) Whether a party's later position is "clearly inconsistent" with its original position;

(2) Whether the party has successfully persuaded the court of the earlier position; and

(3) Whether allowing the inconsistent position would allow the party to "derive an unfair advantage or impose an unfair detriment on the opposing party."

*Dovey*, ¶ 15 (citing *U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir., 2008); *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 1815 (2001)).

¶36      In the bankruptcy context, judicial estoppel prevents a party from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citations omitted).  11 U.S.C. § 521(1) governs a debtor's duties in bankruptcy and provides that "[t]he debtor shall file a list of creditors; and unless the court orders otherwise—a schedule of assets and liabilities; a schedule of current income and current expenditures; [and] a statement of the debtor's financial affairs[.]"  "Generally, a debtor who fails to disclose a contingent and unliquidated claim in a bankruptcy proceeding is judicially estopped from pursuing that claim after being discharged from bankruptcy."  *Kucera*, ¶ 9 (citing *Hamilton*, 270 F.3d at 783).  The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules but continues for the duration of the bankruptcy proceedings.  *Kucera*, ¶ 12 (citing *Hamilton*, 270 F.3d at 785; Fed. R. Bankr. P. 1009(a)).

### A. Malicious Prosecution

¶37      Saddlebrook argues that judicial estoppel does not bar its malicious prosecution claim against Krohne Fund because, under our precedent in *McAtee v. Morrison & Frampton, PLLP*, 2021 MT 227, 405 Mont. 269, 512 P.3d 235, the claim did not accrue

15

until 2017 when Krohne Fund's suit in the federal district court was terminated in Simonsen's favor, by which time the claim already had been assigned to Grizzly Peak. Saddlebrook further asserts that Grizzly Peak was not a debtor in the bankruptcy, but rather a creditor, and therefore Simonsen's duty to schedule his assets under 11 U.S.C. § 521(a) does not apply. Krohne Fund responds that *McAtee* is distinguishable because Simonsen's malicious prosecution claim accrued when he filed his complaint in the District Court in 2015.

¶38 A claim for malicious prosecution is established upon a showing of the following elements:

(1) A judicial proceeding was commenced and prosecuted against the plaintiff;

(2) The defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) There was a lack of probable cause for the defendant's acts;

(4) The defendant was actuated by malice;

(5) The judicial proceeding terminated favorably for the plaintiff; and

(6) The plaintiff suffered damages.

*McAtee*, ¶ 17 (citing *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10).

¶39 In *McAtee*, the owner of The Mortgage Source (TMS), McAtee, facilitated a construction loan with Whitefish Credit Union (WCU). *McAtee*, ¶ 3. When borrowers defaulted on the loan, McAtee foreclosed on the property to prevent WCU from incurring foreclosure expenses. *McAtee*, ¶ 4. In March 2011, Defendant Morrison & Frampton

("M&F") filed a civil complaint against McAtee on behalf of WCU, alleging fraud for using WCU's collateral instead of TMS's when securing a loan from another lender, which resulted in McAtee's indictment on two counts of federal banking fraud. *McAtee*, ¶ 5.

¶40   In 2011, during the pendency of the civil and criminal fraud actions, McAtee filed for bankruptcy; she received a discharge later that year. *McAtee*, ¶ 6. McAtee's criminal charges were dismissed in 2012; her bankruptcy case closed in May 2013. *McAtee*, ¶ 6. M&F's civil fraud claim against McAtee was dismissed in 2014. *McAtee*, ¶ 6. In 2015, McAtee filed a separate civil lawsuit against M&F alleging malicious prosecution, abuse of process, and constructive fraud. *McAtee*, ¶ 7. M&F moved for summary judgment, asserting McAtee was judicially estopped from pursuing her claims against M&F because she failed to disclose the claims as assets in her personal bankruptcy. *McAtee*, ¶ 7. The district court granted summary judgment in favor of M&F on the issue of judicial estoppel and dismissed McAtee's malicious prosecution claim with prejudice. *McAtee*, ¶ 10.

¶41   We determined that because McAtee's criminal fraud charges were commenced and dismissed during the time her bankruptcy case was open, McAtee was required to disclose her malicious prosecution claim as premised on the criminal case once the charges were dismissed. *McAtee*, ¶ 18 (citing *Kucera*, ¶ 12). We therefore agreed that her malicious prosecution claims were barred by judicial estoppel to that extent. *McAtee*, ¶ 18. "McAtee was not required, however, to amend her bankruptcy schedules to include her malicious prosecution claim as premised on the civil fraud action because no termination, favorable or otherwise, existed in the civil fraud action while McAtee's bankruptcy case was pending." *McAtee*, ¶ 19.

17

¶42    Simonsen filed for bankruptcy in January 2014.  He filed this suit in the Thirteenth Judicial District Court, Yellowstone County, in April 2015.  When Simonsen filed for bankruptcy, his claims against Krohne Fund and others became part of the bankruptcy estate overseen by the Trustee, including the claim filed in the District Court here.  *See* 11 U.S.C. § 541(a)(1) ("The commencement of a case . . . creates an estate.  Such estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case.")  In April 2016, the Trustee assigned the claims through the settlement agreement to Grizzly Peak, which thereafter assigned the claims to Saddlebrook.  The judicial proceeding against Simonsen on which his malicious prosecution claim is based did not terminate in his favor until 2017, when the federal district court dismissed the case on remand from the Ninth Circuit.  By that time, the Trustee had assigned the claim to Grizzly Peak.  Following the reasoning in *McAtee*, Simonsen's claim had not accrued until Krohne's federal lawsuit was dismissed.  At that time, in contrast with the debtor in *Kucera*, the claim no longer belonged to Simonsen, and he was not obligated to disclose it.  Saddlebrook did not take an inconsistent position.  The District Court therefore erred when it held that Saddlebrook, Grizzly Peak's assignee, was judicially estopped from pursuing the malicious prosecution claim.

*B. Abuse of Process*

¶43    Saddlebrook contends the District Court erred in determining that it was judicially estopped from pursuing the abuse of process claim.  Although it admits Simonsen should have disclosed the abuse of process claim in its bankruptcy schedules because evidence suggesting the ulterior motive was discovered before Simonsen filed his bankruptcy

18

petition, Saddlebrook asserts the claim belonged to the bankruptcy estate and was pursued by and under the direction of the Trustee. Therefore, Saddlebrook argues, judicial estoppel does not apply because the Trustee knew of the claim, pursued it, and gave notice to all creditors before assigning and then abandoning it.

¶44 Krohne Fund responds that the District Court correctly applied the rule in *Hamilton* that judicial estoppel will be imposed "when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784 (citations omitted). Krohne Fund maintains that Saddlebrook intentionally manipulated the courts by taking inconsistent positions, as it did not make any assertion that the failure to file notice of these claims on Simonsen's bankruptcy schedules was based on mistake or inadvertence in its briefing before the District Court. Krohne Fund argues Simonsen was aware of his claims in May 2013 when he sought to bring counterclaims and third-party claims in the federal district court action. Krohne Fund asserts Simonsen's omission imposed an unfair detriment—the third judicial estoppel factor—because creditors were not given notice of Simonsen's claims before the District Court.

¶45 "[T]here is a difference between a debtor attempting to pursue an action for his own benefit, and a trustee pursuing an action for the benefit of creditors." *Samson v. Wal-Mart Stores, Inc.*, 2013 U.S. Dist. LEXIS 196196, *7 (D. Mont.) (quoting *Wood v. Household Fin. Corp.*, 2006 U.S. Dist. LEXIS 27987, **10-11 (W.D. Wash.) (citing *Biesek v. Soo Line R.R.*, 440 F.3d 410 (7th Cir. 2006); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th

19

Cir. 2004))). "[T]he *Hamilton* line of cases . . . does not apply to situations where the bankruptcy trustee is pursuing the non-disclosed action." *Samson*, *7 (citations and internal quotations omitted). "Once substituted, a bankruptcy trustee is free to pursue the debtor's nondisclosed claim." *Samson*, *7 (citations omitted).

¶46    Once substituted, the Trustee here was free to pursue Simonsen's undisclosed claim. *Samson*, *7. Whereas the Trustee in *Hamilton* denied having knowledge of the debtor's pending claims against State Farm, the Trustee here had knowledge of Simonsen's claims and authorized the state court suit. The Trustee represented in her affidavit:

> In the spring of 2015, Singer and I discussed by email the need to preserve the counterclaims against Krohne Fund in state court before the statute of limitations ran. Singer sent me a draft complaint on April 1, and on April 2, 2015, I agreed the claims needed to be preserved and authorized Singer to file the complaint.

Regarding the federal district court claims, the Trustee remarked:

> In December 2016, when the Ninth Circuit noticed a hearing for February 7, 2017, Singer asked me whether the bankruptcy estate was asserting any interest in the appeal. After reviewing a case summary and assessment of the likely outcome he provided, I concluded the estate did not have the funds or the stamina to keep the case open as long as it seemed it would take to resolve, so I opted to abandon the claim.

She further attested that after the federal district court granted summary judgment in favor of Simonsen in October 2017, she "no longer had interest in any claim Simonsen might assert against Krohne Fund, including any claims that may have accrued as a result of Simonsen prevailing in the federal case."

¶47    "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy

20

petition." *Parker*, 365 F.3d at 1272 (citing 11 U.S.C. § 541(a)(1) (providing that the bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case")). "Thus, a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate." *Parker*, 365 F.3d at 1272 (citing 11 U.S.C. § 323; *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003)). Singer admittedly erred by filing the original complaint in Simonsen's name, but the Trustee obviously had control of the claims, as she assigned them to Grizzly Peak for valuable consideration to the estate. Simonsen "understood the Trustee owned the Krohne Fund claims" when he brought them in state court. The Trustee's settlement agreement removed Grizzly Peak as a potential creditor of the estate and brought additional funds into the estate for the benefit of remaining creditors. Saddlebrook, therefore, did not derive an unfair advantage or impose an unfair detriment on Krohne Fund—the final element of judicial estoppel. The Trustee's motion for approval of the settlement agreement provided electronic notice of it to Simonsen's creditors and allowed them fourteen days to file a written objection. None objected. Under the reasoning in *Samson*, because the Trustee had control of Simonsen's abuse of process claim through the bankruptcy estate, the District Court erred when it estopped Saddlebrook from pursuing that claim.

## CONCLUSION

¶48 Saddlebrook is not judicially estopped from pursuing its malicious prosecution and abuse of process claims against Krohne Fund. We reverse the District Court's summary

21

judgment order in favor of Krohne Fund and remand for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE